UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KATHERINE J. TAYLOR, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CASE NO.: 4:14-cv-0010-TWP-DML ) |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security, Administration, | ) ) ) ) ) |
| Defendant. | ) |

## Report and Recommendation on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. (Dkt. 18). As addressed below, the Magistrate Judge recommends that the District Judge REVERSE AND REMAND the decision of the Commissioner of the Social Security Administration that plaintiff Katherine J. Taylor is not disabled.

## Introduction

Plaintiff Katherine J. Taylor applied in April 2010 for Disability Insurance Benefits (DIB) and Supplemental Security Income disability benefits (SSI) under Titles II and XVI, respectively, of the Social Security Act, alleging that she has been disabled since August 30, 2008. Acting for the Commissioner of the Social Security Administration following a hearing on June 11, 2012, administrative law judge William C. Zuber issued a decision on August 24, 2012, that Ms. Taylor is not

disabled. The Appeals Council denied review of the ALJ's decision on November 27, 2013, rendering the ALJ's decision for the Commissioner final. Ms. Taylor timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Ms. Taylor contends that the ALJ's decision contains a panoply of errors. As addressed below, the court finds that the failure by the ALJ (and by state agency physicians and psychologists throughout the administrative process) to evaluate Ms. Taylor's mental and physical impairments in combination requires reversal and remand.

## **Standard for Proving Disability**

To prove disability, a claimant must show that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (DIB benefits); 42 U.S.C. § 1382c(a)(3)(A) (SSI benefits).[1] Ms. Taylor is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and

---

[1] Two programs of disability benefits are available under the Social Security Act: DIB under Title II for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423 *et seq.*, and SSI disability benefits under Title XVI for uninsured individuals who meet income and resources criteria, 42 U.S.C. § 1381 *et seq.* The court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to DIB benefits. For SSI benefits, materially identical provisions appear in Title XVI and generally at 20 C.F.R. § 416.901 *et seq.*

work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the

fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her vocational profile (age, work experience, and education) and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the

4

conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. The ALJ's Sequential Findings

Ms. Taylor was born in 1958 and was 50 years old at the alleged onset of her disability in August 2008. She was 56 years old at the time of the ALJ's decision denying disability benefits. At step one, the ALJ determined that Ms. Taylor had not engaged in substantial gainful activity since her alleged onset of disability. At step two, he found that Ms. Taylor suffered from a range of severe physical and mental medical impairments: depression, anxiety, migraine headaches, residuals of left wrist fracture, obesity, degenerative disc disease of the lumbar spine, COPD, sleep apnea, a history of right shoulder injury, and a history of right hemiparesis symptoms. At step three, he found that none satisfied a listing.

For purposes of steps four and five, the ALJ decided that Ms. Taylor had the residual functional capacity (RFC) to perform light work (which requires the ability to stand and walk up to six hours in an eight-hour work day), although she must be given the option to sit or stand every 30-45 minutes, and can only occasionally stoop, crouch, crawl, kneel, or climb ramps or stairs. She cannot climb ladders, ropes or scaffolds, and she cannot use her dominant right upper extremity above the shoulder level. She can use her right lower extremity for foot controls only occasionally. She also cannot be exposed to dangerous machinery or unprotected

heights or to dust, fumes, gases, or odors. With respect to Ms. Taylor's mental impairments, the ALJ determined that she can perform only simple, unskilled, routine tasks, cannot have more than occasional contact with co-workers and supervisors, and can have no contact with the public. (R. 20).

With this RFC and based on the testimony of a vocational expert, the ALJ determined that Ms. Taylor was not capable of performing her past relevant work, but was capable of other jobs available in significant numbers in the economy. Accordingly, he determined at step five that Ms. Taylor was not disabled.

## II. The ALJ's failure to evaluate Ms. Taylor's combined physical and mental impairments requires remand.

Ms. Taylor's medical records and her testimony revealed a complicated history of physical and mental impairments. She had a history of migraine headaches and began experiencing left arm numbness and tingling in her head and face in 2007. (*E.g.,* R. 362-63). Her August 2008 alleged disability onset date coincides with a 9-day hospitalization in early August because of symptoms of a left-sided headache with migraines and numbness involving her right side and face that moved or spread to the left side of her face and left upper extremity. (R. 292). After an MRI, EKG, lab work, and other follow-up testing and examination, her physician concluded in a report dated in November 2008 that Ms. Taylor's condition indicated "[i]mmobilization syndrome with weird neurological symptoms but devoid of any neurological deficit." (*Id.*) He recommended a "[c]omplete neuropsychological evaluation with possible psychosomatic overlay of the alleged complex symptoms." (*Id.*). Seven months later, the doctor continued to note "[w]eird symptoms" of right

6

sided numbness, including the right lower face and right extremity, with the symptoms present since August 2008. (R. 290).

The administrative record reflects consistent complaints by Ms. Taylor of physical numbness, weakness and burning sensations on her right side, and her medical practitioners' consistent observations of her unsteady gait, difficulties standing and walking, and her use of a cane or walker. At least one physician stated that Ms. Taylor "requires the use of a cane for stability." (R. 699). Medical records also reflect that apart from a right shoulder rotator cuff impingement and some degenerative spine issues, none of the universe of testing (including MRIs, lab work, nerve conduction studies, x-rays, and EKGs) Ms. Taylor underwent provided an etiological explanation for her numbness, weakness, and gait and balancing problems that had persisted from at least August 2008 through the entire period the ALJ evaluated. Ms. Taylor was examined again in December 2011 and April 2012 by a neurologist to evaluate her right-sided numbness and gait issues. That doctor also independently reviewed Ms. Taylor's "many" neurological tests (including MRI, EEG, and EMG studies). He explained to Ms. Taylor that her physical problems may be caused by a mental impairment: "I was frank with the patient today that she may have a conversion order." (R. 839). He reported that Ms. Taylor "was not open to this idea." (*Id*.). That was at least the third time over nearly a four-year period that a treating physician expressed an opinion in his medical report that Ms. Taylor's strange symptoms were indicative of a somatoform disorder.

Ms. Taylor's medical history is complicated and the administrative record contains more than 700 pages of medical records. At the administrative hearing,[2] the ALJ commented that he was "in over his head" in terms of the complicated medical impairments presented in the case, expressed his intent to order a neuropsychological evaluation, and stated that he believed the state agency physicians "really didn't have a grasp of this." (R. 98, 100, 101). Following the hearing, Ms. Taylor was seen by a state agency psychologist who conducted a mental status examination, administered intelligence and academic achievement tests, and administered a depression index test. But, as Ms. Taylor argues (and the Commissioner does not contest), the post-hearing examination did not include a neuropsychological evaluation and did not address, consider, or evaluate Ms. Taylor's suffering from a somatoform disorder.

A somatoform disorder is a mental illness that causes bodily symptoms even though the symptoms cannot be traced to a physical cause. *See* http://www.webmd.com/mental-health/somatoform-disorders-symptoms-types-treatment. When the bodily symptoms "involve any aspect of the central nervous system over which voluntary control is exercised" (such as Ms. Taylor's balance and gait issues), the mental health disorder is described as a conversion disorder. *See* www.ncbi.nlm.nih.gov/pubmed/15101499 (Somatization and conversion disorder) ("Conversion disorder occurs when the somatic presentation involves any aspect of

---

[2] Ms. Taylor was not represented by counsel at the administrative hearing, but appeared with a non-attorney representative.

the central nervous system over which voluntary control is exercised.") "People with somatoform disorders are not faking their symptoms. The pain and other problems they experience are real. The symptoms can significantly affect daily functioning." *See* http://www.webmd.com/mental-health/somatoform-disorders-symptoms-types-treatment.

Even though the post-hearing examination was not what the ALJ explained at the hearing he wanted in order to properly evaluate Ms. Taylor's disability applications, he ignored that he did not get what he wanted. In addition, his decision reflects his discounting of the medical evidence of a conversion or somatoform disorder on the ground that Ms. Taylor's neurologist reported that she was "not open" to the idea that she suffered from a conversion disorder. (R. 13 and 22). But there's no suggestion that Ms. Taylor is qualified to evaluate whether she suffers from a conversion order and the ALJ never considered whether her reluctance to believe her physical symptoms result from a mental impairment may be a symptom of the mental illness itself. More importantly, the ALJ did not consider whether Ms. Taylor's somatoform disorder may require accommodations for its physical (and not cognitive) symptoms.

Instead, the ALJ's decision as well as the various consultative medical and psychological examinations and reports prepared by state agency personnel show that Ms. Taylor's physical symptoms were not evaluated in combination with her mental impairments. As the ALJ remarked during the hearing (but seemed to have forgotten when he prepared his written decision), the reports of state agency

9

physicians indicate they didn't grasp Ms. Taylor's impairments. Ms. Taylor's physical symptoms were gauged against physical testing and were not evaluated in combination with her mental impairments. The reverse was also true. The psychologists who evaluated her mental impairments "deferred" to physicians to evaluate her physical impairments, including Ms. Taylor's right side weakness, and they highlighted Ms. Taylor's belief that her physical problems (but not mental ones) were her main obstacle to working.

State agency medical doctors (and the ALJ) determined that Ms. Taylor's claims of generalized right-sided weakness were unsubstantiated by objective medical evidence, which harmed Ms. Taylor's credibility and provided an insufficient basis for restrictive work limitations including any limitations because of her use of a cane or walker. (*E.g.,* R. 563-570 (Dr. Sands's physical residual functional capacity assessment that other than to accommodate her rotator cuff, Ms. Taylor is capable of high physical activity); R. 20 (ALJ decision that there is insufficient medical basis for Ms. Taylor's use of a cane or other assistive device, despite the contrary notations of physicians, and that Ms. Taylor has the capacity to stand and walk six hours in a work day so long as she is given the option to sit or stand every 30-45 minutes). State agency medical doctors and psychologists expressly did not consider whether Ms. Taylor's physical problems had a mental component. (*E.g.,* R. 487 and 807 (mental status examination reports say that "The diagnosis, prognosis, and impact of [Ms. Taylor's] physical problems are deferred to physicians"; R. 826 (mental functional capacity assessment stating that Ms. Taylor's

functional deficits in daily living activities are "primarily limited by physical issues," not mental ones).

It is essential that a disability claimant's medical problems be considered in combination. *Goins v. Colvin,* 764 F.3d 677, 680 (7th Cir. 2014) ("We keep telling the Social Security Administration's administrative law judges that they have to consider an applicant's medical problems in combination"). The ALJ's failure to do so in this case, when there is substantial evidence that Ms. Taylor's physical problems are related to a very real mental impairment and should not be discounted or not accommodated because of the lack of underlying physical causes, requires the court to reverse and remand the Commissioner's decision.

The court urges the ALJ to order appropriate medical evaluations (such as the complete neuropsychological workup he indicated at the hearing he wanted to have) and to obtain expert medical advice to assist him with the complicated medical record in this case.

### III. <u>Other Alleged Errors</u>

Because the court determines that this case must be remanded on the foregoing grounds, it does not reach all of the alleged errors raised by Ms. Taylor. An understanding of the interplay between Ms. Taylor's mental impairments and her physical symptoms may substantially alter the ALJ's original evaluations of various pieces of evidence, including medical source statements. With new medical

evidence and expert testimony, the ALJ may revisit his decisions regarding Ms. Taylor's credibility,[3] whether a listing was met, and, if not, an appropriate RFC.

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge REVERSE AND REMAND the Commissioner's decision under sentence four of 42 U.S.C. § 405(g). Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P 72(b). The failure to file objections within 14 days after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

IT IS SO RECOMMENDED.

Dated: February 17, 2015

_____
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system

---

[3] The court notes here that the ALJ's discussion of Ms. Taylor's credibility includes a "sit and squirm" observation that is not appropriate and includes several statements that are mere boilerplate and not reflective of a reasoned credibility evaluation (the paragraph regarding the lack of objective verification of limited daily activities and the illogical statement that Ms. Taylor's complaints were deemed not credible if they did not fit the RFC).